Dear Mr. Boyd,
The Attorney General has received your request for an official opinion asking, in effect:
 Under the provisions of 3A O.S. 205.1, 3A O.S. 205.2 (1984) and Rule 202 of the Rules of Racing (Pari-mutuel) of the Oklahoma Horse Racing Commission, as adopted May 24, 1984, at what time is the Commission obligated to make examinations or final decisions concerning organization license applications for calendar year 1986?
In 1983, the people of Oklahoma authorized the Oklahoma Legislature to enact laws permitting pari-mutuel horse racing in the State on a county-option basis, with the adoption by popular vote of State Question 553. Pursuant to that mandate, the Legislature enacted the Oklahoma Horse Racing Act (Act), codified now as 3A O.S. 200 — 3A O.S. 209
(1984). The Act, itself, provides far-reaching and comprehensive guidelines intended to govern all aspects of horse racing activity.
To oversee and supervise administration of the Act's provisions, the Legislature established the Oklahoma Horse Racing Commission, and granted that body wide authority to effectuate the purposes of the act.
3A O.S. 201, 3A O.S. 203.7, 3A O.S. 204 (1984). Among other specific grants of authority, the Commission is mandated with supervision of all race meetings held in Oklahoma and all organization licensees, 3A O.S.204(A)(1) (1984), as well as with the obligation to promulgate rules and regulations for the granting of organization licenses. 3A O.S. 204(A)(6) (1984).
Both statutory and administrative guidelines have been set forth to govern the process by which organization license applications must be received and reviewed in this state. In this vein, the following excerpt from 3A O.S. 205.1(A) (1984), is of pertinence:
 "Any person desiring to conduct a race meeting may apply to the Commission for an organization license. . . ."
The remainder of the statute provides a list of factual data that must be supplied with any organization license application submitted to the Commission, and forbids licensure for applicants failing to satisfy the conditions set forth. The next statutory section in the Act, 3A O.S.205.2 (1984) provides, in pertinent part:
 "A. Applications for organization licenses must be filed with the Commission at a time and place prescribed by the rules and regulations of the Commission . . . Within thirty (30) days after the date specified for filing, the Commission shall examine the applications for compliance with the provisions of the Oklahoma Horse Racing Act and such rules and regulations as may be promulgated by the Commission."
Under the plain language of this statute, the Commission is authorized to establish by administrative rule a filing date for organization license applications. The current filing date for race meetings to be held in calendar year 1986 is August 1, 1985, under the following provisions of rule 202 of the Commission's Rules of Racing (Pari-mutuel Edition), as adopted May 4, 1984:
 "Application For License And Days To Conduct A Horse Race Meeting. Every person who intends to conduct a horse race meeting shall file such application with the Commission no later than August 1 of the preceding calendar year. Any prospective applicant for license and days to conduct a horse racing meeting failing to timely file the application for license may be disqualified and its application for license refused summarily by the Commission."
A plain reading of 3A O.S. 205.1 and 3A O.S. 205.2 of the Act, as well as that of current Commission Rule 202, indicates that the Commission has discretionary authority permitting it to defer making any examination of organization license applications for race meetings to be held in calendar year 1986 until August 31, 1985. The examination that must be made within this time frame is merely to ascertain conformity of such applications with the Act and Commission regulations. There is no mandate or limitation, express or implied, requiring the Commission to render any final decision regarding a particular application within any predetermined time frame. Where the language of statutory provisions is plain and unambiguous, and their meaning clear and no occasion exists for application of rules of construction, the language used will be accorded its meaning as expressed therein. Cave Springs Public School Dist. I-30,of Adair County v. Blair, 613 P.2d 1046 (Okla. 1980). Where the Legislature has authority to speak to an issue, but has not done so, such legislative silence is indicative of legislative intent. City of Duncanv. Bingham, 394 P.2d 456 (Okla. 1964).
It is, therefore, the official opinion of the Attorney General thatunder the provisions of 3A O.S. 205.1, 3A O.S. 205.2 (1984) and Rule 202of the Rules of Racing (Pari-mutuel Edition) of the Oklahoma Horse RacingCommission, as adopted May 24, 1984, the Commission must make examinationof organization license applications for calendar year 1986, as to theirconformity with the Act and with Commission rules or regulations, byAugust 31, 1985. The Commission is under no current statutory oradministrative constraint obligating the rendering of a final decisionregarding any application within any set time frame.
MICHAEL C. TURPEN, ATTORNEY GENERAL OF OKLAHOMA
MICHAEL SCOTT FERN, ASSISTANT ATTORNEY GENERAL